IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | CRIMINAL ACTION NO. 06-259-CG-C |
| v. | ) | |
| | ) | CIVIL ACTION NO. 10-080-CG-N |
| BRUCE MICHAEL ORR, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

REPORT AND RECOMMENDATION

This matter is before the court on petitioner Bruce Michael Orr's Motion to Vacate, Set Aside or Correct Sentence (doc. 152) pursuant to 28 U.S.C. §2255. This motion has been referred to the undersigned for preparation of a Report and Recommendation pursuant to 28 U.S.C. §636 and Local Rule 72.1(c). An evidentiary hearing was begun before the undersigned on May 3, 2012, and continued to October 4, 2012. Present at the hearing were William Kent, Esq., on behalf of petitioner, and AUSAs Sean Costello and Steven Butler for the government. Upon careful review of the record, including the briefs and arguments of the parties and the testimony and other evidence offered at the hearing, it is the recommendation of the undersigned that Orr's Motion be DENIED.

Procedural Background

Bruce Michael Orr was charged in a three-count indictment (doc. 1) with receipt and distribution of child pornography, possession and attempted possession of child pornography, and a forfeiture count. Petitioner's first trial on April 10-13, 2007, resulted in a hung jury and a mistrial was declared (doc. 66). The case was retried on June 18-21,

2007, and Orr was convicted on counts one and two.  He was sentenced on October 26, 2007, to a term of 168 months imprisonment, and lifetime SRT thereafter.

Orr's conviction and sentence were affirmed on direct appeal (doc. 166); the Court of Appeals *inter alia* considered and rejected Orr's claim of ineffective assistance of counsel, which was premised on his attorney's failure to produce an adequate supplemental report by his expert prior to his second trial.  That failure had led the trial judge to preclude defendant's expert to testifying to different opinions than he had expressed at the first trial.  Orr claimed that his expert would have testified that (1) all accounts on the family's computer had administrative rights, (2) the password to the "Bruce" account was changed on June 18, 2005, by the user of the "M" account, and (3) the shortcut to the computer's temporary file folder was created while the computer was at Mrs. Orr's church.  The Court of Appeals found that these matters had been introduced at the second trial through cross examination of the government's expert, and thus that Orr had failed to demonstrate that he had been prejudiced by counsel's error.  *See* doc. 166.

<u>Summary of Basic Facts</u>

Petitioner Orr was married to Silinda Orr, who had a single child prior to their marriage.  They purchased a computer that all three of the Orr family used.  Silinda Orr took the computer to her church for a computer class; thereafter, she again took the computer to the church so that the staff could make it run faster.  Staff at the church discovered images in the computer's cache which appeared to be child pornography. They notified Silinda about what they found and, with her approval, removed the hard drive [Q-2] and replaced it with another [Q-3].  Church staff notified the authorities who

eventually took custody of the original hard drive.  Without obtaining a warrant[1], the FBI performed a search of the hard drive [Q-2] and, based upon what they discovered, obtained a search warrant for Orr's house.  The FBI seized the computer with the new hard drive [Q-3] from the house as well as a thumb drive from Bruce Orr's person.

The above facts are uncontested.  The court will address additional factual findings in connection with the individual claims to which they are relevant.

<u>Issues Raised</u>

Petitioner raises five grounds in his habeas motion, including four claims that his trial counsel was ineffective, and one count claiming ineffective assistance of trial and initial appellate counsel.  Specifically, petitioner claims that his trial counsel was ineffective for (1) failing to seek to exclude the FBI's warrantless search of the computer hard drive "Q-2"; (2) failing to seek to exclude warrantless search and seizure of a "thumb drive" taken from Orr's person during the search of his home; (3) for failing to object to the government's failure to provide a complete summary of its expert's testimony, and to move to strike testimony on opinions not previously disclosed; (4) for failing to seek to exclude statements Orr made to FBI agents, on the bases that (i) they were fruit of the poisonous tree, arising from ground 1, (ii) that they were obtained in custodial questioning without Miranda warnings, and (iii) that subsequent statements were tainted by the improper prior statements; and (5) that trial and initial appellate counsel were ineffective for failing, in the motion for new trial or on appeal, to

---

[1] The government originally filed a Response to the instant habeas motion asserting that they had a warrant: in attempting to locate that document for petitioner's counsel, they discovered that they had not obtained one and thereafter filed a supplemental Response which contained arguments for the constitutionality of the warrantless search under various theories.

adequately demonstrate prejudice from the exclusion of new opinions from plaintiff's expert.  In addition, at the end of his Reply brief (doc. 164), petitioner includes a section entitled 'cumulative error and prejudice.'  In that section, Orr's attorney re-argues the prejudicial effect of government's statement in closing argument that the 'shortcut' to the Temporary Internet file was created by Orr so that he could go back to prior images of child porn, which 'proved' that the images were not inadvertent.  This last section is redundant and is not addressed separately.

Legal Standard

*Habeas*

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." U.S. v. Frady, 456 U.S. 152, 165 (1982). A defendant who has exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. U.S. v. Addonizio, 442 U.S. 178, 185 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack.... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. U.S., 598 F.2d 439, 441 (5th Cir. 1979).

In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim he raises. First, "nonconstitutional claims can be raised on collateral review only

when the alleged error constitutes a fundamental defect which inherently results in a
complete miscarriage of justice or an omission inconsistent with the rudimentary
demands of fair procedure." Burke v. U.S., 152 F.3d 1329, 1331 (11th Cir. 1998)
(citations and internal quotations omitted). A petitioner's burden with regard to
constitutional claims not presented on direct appeal is slightly less stringent.
Constitutional claims may be considered if the petitioner can "show cause excusing his
failure to raise the issues previously and actual prejudice resulting from the errors." Cross
v. U.S., 893 F.2d 1287, 1289 (11th Cir. 1990). Jurisdictional issues, however, are not
subject to procedural default because federal courts are of limited jurisdiction and the
parties cannot by waiver or default confer a jurisdictional foundation that is otherwise
lacking. Harris v. U.S., 149 F.3d 1304, 1306 (11th Cir. 1998).

*Ineffective Assistance of Counsel*

In order to succeed on a claim of ineffective assistance of counsel, a petitioner
must show that (1) his counsel's performance was deficient; and (2) that the deficient
performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668 (1984).

> Strickland does not guarantee perfect representation, only a " 'reasonably
> competent attorney.' " 466 U.S. at 687, 104 S.Ct. 2052 (*quoting* McMann
> v. Richardson, 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970));
> see also [Yarborough v. Gentry, 540 U.S. 1, 7 (2003)]. Representation is
> constitutionally ineffective only if it "so undermined the proper
> functioning of the adversarial process" that the defendant was denied a fair
> trial. Strickland, *supra*, at 686, 104 S.Ct. 2052. Just as there is no
> expectation that competent counsel will be a flawless strategist or
> tactician, an attorney may not be faulted for a reasonable miscalculation or
> lack of foresight or for failing to prepare for what appear to be remote
> possibilities.

Harrington v. Richter, —— U.S., ——, 131 S.Ct. 770, 791 (2011).

Under the performance prong, the relevant inquiry is whether counsel's representation was "objectively reasonable." Crawford v. Head, 311 F.3d 1288, 1311 (11th Cir. 2002). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. A petitioner can rebut this presumption only by proving his attorney's representation was unreasonable under prevailing professional norms. Chandler v. U.S ., 218 F.3d 1305, 1314 n. 15 (11th Cir. 2000) (*en banc*). "Therefore, where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." Id. (quotations and citation omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support limitations on investigation." Strickland, 466 U.S. at 690–91.

The petitioner's burden of demonstrating prejudice is high. Under the prejudice prong, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Instead, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Wellington, 314 F.3d at 1260 (quotations and citations omitted).

Analysis

1.  Failure to Challenge Warrantless Search of Q-2

Petitioner asserts that his trial counsel was constitutionally ineffective because he failed to file a Motion to Suppress the original hard drive which was removed from his computer.  The hard drive which was originally in the Orr family computer at the time Silinda Orr took it to her church to be serviced was designated as Q-2; after the staff at the church found the troubling images, they replaced the hard drive with a new one which has been designated as Q-3.  Mrs. Orr authorized the search of the hard drive.

In briefing to this court, the government originally acknowledged that the search of Q-2 required a warrant (doc. 161 at 9), but claimed that its agents had obtained a warrant covering that hard drive.  Only after briefing was completed did the government determine that no warrant existed.  The government filed a Supplemental Response (doc. 169) which acknowledged that fact, but argued that Mrs. Orr's authorization was an independent basis for the search.

Petitioner's counsel argued in his brief that the government claimed at trial that Q-2 was password protected; after discussions between counsel, petitioner's counsel acknowledged at the hearing that the trial references to "the computer" or "the hard drive" being password protected do not clearly reference Q-2, especially as some of the references were to "the Bruce Account" which did not exist on Q-2.  Nonetheless, petitioner's counsel asserts that the court must have Q-2 independently evaluated to determine, as a matter of fact, whether Q-2 was password protected, as the answer will inform the argument concerning the legality of the FBI's warrantless search of Q-2. Specifically, petitioner's counsel asserts that, if the child pornography images found by the government on Q-2 were protected by a password, Mrs. Orr would not have been able to give a valid consent. While it is true that the answer would impact the petitioner's

ability to satisfy the prejudice prong of the <u>Strickland</u> analysis, the state of mind of defendant's trial counsel at the time he had to decide whether there was a good faith basis for filing a motion to suppress Q-2 nonetheless controls the reasonableness of counsel's decision and thus is dispositive of the deficiency issue.

At the hearing, the government offered evidence from Attorney Jefferson Deen, Orr's trial attorney, and Michael Black, the defense's computer expert.  The court finds that Black had informed Orr's trial attorney that there was no password on Q-2; defendant also testified at trial that there was no password on that computer.  Thus, whether or not Mr. Black was factually correct—that is, whether or not the hard drive Q-2 might now be tested and it be discovered that there was a password, Orr's attorney could have reasonably relied on the information from his expert.  Given the belief that there was no password, effective counsel reasonably could have determined that there was no good faith basis for filing a Motion to Suppress the contents of Q-2.  Petitioner has thus failed to satisfy the performance prong of the <u>Strickland</u> analysis.

<u>2.  Failure to Challenge Seizure of Removable Media [thumb drive]</u>

Petitioner next argues that his trial attorney was ineffective for failing to seek to exclude the contents of a "thumb drive" which had been around Orr's neck on a cord at the time of the execution of a search warrant on the Orr home.  The warrant covered only the home and not the person of Bruce Orr.  At the evidentiary hearing, attorney Deen testified that he considered filing a suppression motion, but determined that there was no valid basis; that testimony indicates that this was a strategic decision.

Further, based upon evidence adduced at the hearing, the court finds that Bruce Orr had returned to the house and was inside the building at the time the thumb drive was seized, rather than outdoors as he had been at the beginning of the search warrant execution.[2] As such, the court holds that the search warrant, which covered the contents of the house, could reasonably have been deemed by counsel to have applied to the thumb drive which was taken from Mr. Orr's person while inside the house.  *See* U.S. v. Young, 909 F.2d 442, 444-45 (11th Cir. 1990) (*citing* U.S. v. Micheli, 487 F.2d 429, 431-32 (1st Cir. 1973) *and* U.S. v. Gray, 814 F.2d 49, 51 (1st Cir. 1987)); *see also* U.S. v. Giwa, 831 F.2d 538 (5th Cir. 1987).  In light of such authority, counsel could reasonably have determined that there was no good faith basis for seeking to exclude that evidence.  Petitioner has failed to demonstrate that his trial attorney did not act as constitutionally-sufficient counsel.

3.  Failure to Challenge Government's Expert Disclosures

Petitioner's third argument, that his counsel was ineffective for failing to challenge the government's expert disclosures, is disingenuous.  As Orr's expert witness was precluded from offering new testimony due to inadequate disclosures in discovery, petitioner claims that his attorney did not function as minimally competent counsel because he did not challenge the sufficiency of the government's disclosures concerning its expert witness, either by objection to the disclosures or by motion in limine concerning certain testimony offered by the government's

---

[2] Orr testified at the hearing that the thumb drive was behind his employee badge, that the officer asked for the badge and then noticed the drive.  At that time, Orr and the agent were in the kitchen of Orr's house.

witness in rebuttal as being beyond the scope of his expert report. Specifically, petitioner complains about the following:

1) trial testimony on the specific websites visited or sought by plaintiff, where the expert report did not list sites by name or time they were accessed, as defendant's expert report was required to have;

2) That there were nine days of activity on the computer involving child pornography;

3) testimony that a password was needed to access the "Bruce" account on Q-3;

4) testimony that Wiretap Pro spyware was installed on June 18, and that other spyware had been installed but was not functional; and

5) testimony concerning password changes on June 18.[3]

For its position, the government cites U.S. v. Frazier, 387 F.3d 1244, 1269 (11th Cir. 2004) which held that "the government's presentation of rebuttal testimony without prior notice does not violate Rule 16" as long as the "testimony was properly characterized as rebuttal." Petitioner relies on U.S. v. Noe, 821 F.2d 604 (11th Cir. 1987) which reversed one defendant's conviction on the basis that the government failed to disclose a recording of a phone call that the government used in rebuttal to impeach the defendant's alibi.[4] Leaving aside the issue of whether an expert report in a child

---

[3] Petitioner also cites evidence of the dates on which child pornography was allegedly printed from the computer. The court finds such testimony, at pages 315-18 of the transcript, doc. 143, by the government's expert is in a line of questions beginning with the question "have you printed some of that [child pornography] for use here in court?" Id. at 316. The testimony concerning these print-outs thus did not purport to demonstrate that Orr had printed any of the child pornography.

[4] One obvious distinction between this case and Noe is the fact that defendant Orr and his litigation team had access to all or nearly all of the challenged information within the computer records, and knew that the government had access to the same evidence.

pornography prosecution must be so detailed as to contain the names and times of access of all alleged sources of all of the alleged child pornography on a defendant's computer, the issue presented is whether the report by the government's expert was so deficient that any minimally competent attorney would necessarily have challenged the report or challenged the introduction of any such evidence if it was introduced in evidence under the circumstances present in this case.

Noe relied on case law which had held that reversal for the government's discovery violations requires a showing of prejudice, based upon a showing of how the withholding of the evidence affected the defendant's ability to present a defense. 821 F.2d at 607. The Court held that the failure to disclose defendant's own statements is so serious a detriment that it could affect defense counsel's trial strategy. In the instant case, the issues challenged are details of the contents of the computer's hard drive, a complete copy of which was prepared for Orr and his expert. The matters Orr claims should have been disclosed appear to be the fact that the government's expert was aware of that information from the hard drive: that awareness could have been assumed. More importantly to the court's determination, however, is the lack of any showing that these details were sufficiently central to cause prejudice, or that counsel's failure to make a contemporaneous challenge was prejudicial.

Orr's original motion states simply that "[t]he Government relied upon this testimony to obtain the conviction of Orr." Doc. 152 at 16. Other than quoting Noe, the Reply does not offer much of an argument on prejudice. The statements at issue involve minor details of the mountains of data available on the hard drive. Petitioner has not demonstrated that he was prejudiced by such statements to the extent that, had they been

excluded, the trial would have led to a different conclusion.  Indeed, given the nature of the statements Orr complains about, it affirmatively appears that any surprise which might reasonably have resulted had minimal effect on trial strategy or the outcome of the case.

The petitioner has failed to show that Rule 16 required that level of detail from the expert report;[5] that any minimally competent attorney either would have challenged the government's failure to include that information in its expert report, or would have sought to preclude its admission at trial; that defendant's counsel would have altered his trial strategy if any or all of those statements had been disclosed prior to trial; or that Orr was prejudiced such that, had counsel timely raised the issue, the court would have precluded the introduction of that evidence and that such order would have led to a different verdict.

4.  Orr's Statements to FBI

Petitioner next argues that his trial attorney was ineffective because he failed to file a motion to exclude evidence of Orr's statements made to the FBI.  Orr claims that minimally-competent counsel would have argued that statements he made at the time of the execution of the search warrant should be excluded on the grounds that a) such statements were 'fruit of the poisonous tree,' Wong Sun v. U.S., 371 U.S. 471, 487–488 (1963), arising improperly from the unconstitutional search and seizure of Q-2 from his

---

[5] Rule 16(a)(1)(G), Fed.R.Crim.P., requires the government to disclose a "summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial."

home, and b) because the statements were made during questioning which petitioner characterizes as custodial, without being properly warned of his 'Miranda'[6] rights.

In light of the court's determination that plaintiff has not demonstrated that his attorney was ineffective by failing to challenge the search of Q-2, it does not appear that petitioner can establish that his attorney was nonetheless ineffective for failing to file a motion to suppress evidence obtained as a result of that seizure.  The court finds petitioner's fruit of the poisonous tree argument in favor of this ground for habeas relief to be without merit.

As to the 'custodial' questioning claim, Orr testified at the evidentiary hearing that after the search of the home, he was told that he could leave, but that Orr was worried that, if he did not answer their questions, he might lose his security clearance at work.  Indeed, Orr acknowledged that Agent Roche expressly told him that he was free to leave.  Even if the court were to agree that the FBI required Orr to remain at the house during the search,[7] by his own testimony they did not arrest Orr at that time and did not question him while requiring him to remain.  Orr's decision to talk with FBI agents following the search was voluntary and was made based on his belief that it was in his best interests to do so.  Any subjective belief Orr might have had that he was not free to leave did not result from the acts or statements of law enforcement personnel.  The

---

[6] Miranda v. Arizona, 384 U.S. 436 (1966).

[7] Rather, it appears to the court that plaintiff was never told he had to stay, or was otherwise forced to remain, with the *possible* exception of a short period after the first agent arrived: the petitioner testified that one of the agents blocked the driveway with his car before the remaining agents came.  Presuming without deciding that Orr's testimony on this point was true, this period was over before the search began, and well before any questioning of the petitioner occurred.

questioning was not in a custodial situation and competent counsel could reasonably have determined that there was no good faith basis to seek to exclude Orr's statements.

Orr also claims that any competent counsel would necessarily have sought to exclude statements made on a later occasion, when Orr met with FBI agents in November 2006.  Agents showed Orr a binder of pictures they said were child pornography taken from his computer, and Orr chose to try to explain their presence.  He admitted that he had used search terms such as "Lolita" and "preteen" but claimed that he did so trying to find adult porn.  As in the prior questioning, such statements are not 'fruit of the poisonous tree' from the seizure of Q-2, and there is no basis for believing that this questioning was custodial and done in violation of his rights.  Orr attended voluntarily, and at no time stated that he was forced to answer questions or felt that he was not free to leave.  Petitioner has not borne his burden of proving that his attorney's failure to seek exclusion of his statements to FBI agents constituted ineffective assistance under Strickland.

### 5.  Failure to Adequately Demonstrate Prejudice

Following the second trial, petitioner's counsel[8] filed a Motion for New Trial (doc. 99) on the basis, *inter alia*, that trial counsel was ineffective by failing to adequately disclose his expert's new opinions.  That failure led the trial court to limit the expert's testimony to opinions he had testified about at the first trial.  Orr's first appellate attorney also raised ineffective assistance in Orr's appeal on that basis.  Both courts rejected the arguments.

---

[8] Orr's trial attorney, Jefferson Deen, withdrew (docs. 107, 108) on July 17, 2007, following the filing of the Motion for New Trial (doc. 99) but before the submission of Orr's Reply brief (doc. 114).  Mr. Deen was replaced by attorneys Dennis Knizley and Isadora Alexis Almaro.

The trial court held (doc. 125) that defendant's counsel failed to demonstrate prejudice: the court cited three sentences from a paragraph at the end of Orr's supplement, finding that those sentences were "the sum total of the argument offered by counsel on this point." Id. at 6.[9]

The Court of Appeals likewise held that Orr had failed to show prejudice. The Court listed the opinions to which Orr claimed his expert was prevented from testifying: "(1) although the Bruce account on the computer had administrative rights to the computer, so did all user accounts; (2) the password to the Bruce account was changed on June 18th by the user of the M account; and (3) the shortcut to the temporary internet file folder which was created when the computer was under Goodman's care [at the church] was also accessed and deleted." Doc. 166 at 6-7. The Court of Appeals found that these issues were presented at the second trial on cross examination of the government's expert, and thus that Orr had failed to demonstrate prejudice from the inability to have those matters introduced by his expert. Id.

The government argues that the issue has been decided on appeal and is no longer available to petitioner in the instant §2255 proceedings. Petitioner argues that he offers new bases for this issue, not previously presented to the trial court nor raised in his appellate brief; petitioner acknowledges that he raised the issues before the Court of Appeals, but only in a petition for rehearing. Denial of a petition for rehearing is not a decision on the merits and does not give rise to res judicata. *See* doc. 164 at 19 (*citing*

---

[9] In addition to the brief, Orr's counsel submitted an affidavit from his computer expert as an exhibit to the Motion for New Trial (doc. 109, Ex. A). That affidavit detailed the expert's timely and detailed communication of his expert report to Attorney Deen. The affidavit did not identify specific opinions which Black was prevented from providing at the second trial.

Luckey v. Miller, 929 F.2d 618, 622 (11th Cir. 1991); Riley v. Camp, 130 F.3d 958, 985 n.7 (11th Cir. 1997)(Birch. J., concurring)).

The petitioner has not provided this court with a copy of the petition for rehearing or the order denying that petition.  In Exhibit A to his Reply brief (doc. 164) in support of his current habeas motion, petitioner reproduces the prejudice arguments he made in his §2255 motion (doc. 152[10], at 22-32).  In that section, he discusses the government's arguments on res judicata as well as the merits of his ineffective assistance claim based on the failure to show prejudice; the evidence petitioner cites, however, is drawn largely from the affidavit of Michael Black, his computer expert, which was submitted to the trial court in support of his Motion for New Trial.  Most of the remainder is drawn from the trial transcript itself.

It is difficult to see how these matters can not be deemed to have been previously presented, regardless whether his current attorney, with benefit of hindsight and additional time to craft an argument, is now able to craft a more cogent argument based on the same facts.[11] Regardless, on direct appeal, the panel of the Court of Appeals considering Orr's appeal addressed only the claim that trial counsel provided ineffective assistance of counsel by failing to serve an adequate expert disclosure: the ineffective assistance claim against *post-trial* and *appellate* counsel involves the filing of the Motion

---

[10]  Erroneously identified in the Reply brief as doc. 151.

[11]  There is some conceptual difficulty with the presentation of an ineffective assistance of counsel claim arising from prior efforts to raise an ineffective assistance of counsel claim.  In general, such claims are heard only in a §2255 proceeding; the fact that plaintiff raised them in different procedural vehicles—a post-trial motion and on direct appeal—and that the Courts considered those arguments differentiates the situation from that in which the issue is first raised in a habeas motion.  Where, as here, trial counsel initially raises the ineffective assistance claim against himself, citing his own actions as trial counsel, that exception is especially reasonable.

for New Trial and the Appellate brief, issues which have not been fully addressed on the merits by any court.

Nonetheless, if the trial court and appeals panel were presented with the same evidence and the same arguments as are presented here, petitioner would face an apparently insurmountable hurdle in proving not merely that the post-trial motion and/or the direct appeal likely would have come out differently had counsel done a better job, but that the arguments of his post-trial or appellate counsel were so inadequate that their efforts were equivalent to not having counsel at all.  The court cannot find, from the record presented[12] and the few negligible additional arguments raised in the instant petition that minimally-competent counsel would necessarily have submitted arguments and facts different from those actually submitted, or that such different presentation was likely to have led to a different ruling from either court.

6.  Additional Argument

In Orr's Reply brief, petitioner's counsel included an extra section which does not correspond to any of the specific grounds raised in the Motion.  This extra section is entitled "Cumulative Error and Prejudice." Petitioner asks that the court consider the

_____

[12] Petitioner argues that the government's proof tying him to the child pornography on the family's computer and countering the possibility that it got on the computer unintentionally were based primarily on his alleged creation of a shortcut to the Temporary Internet File Folder ("TIFF") which contained the images.  There was significant other evidence, including but not limited to the existence of thousands of images of child pornography on hard drive Q-2 and/or Q-3; records on Q-3 of web searches using the words lolita, preteen, kids, child, porno and illegal; Orr's admission that he made searches for Lolita and preteen; and the testimony of Mrs. Orr [which the jury could readily have believed] about finding images of child pornography on the computer immediately after petitioner had left the machine.  The issue of who set up the shortcut to the TIFF was presented to the jury, despite not having been the subject of testimony from Orr's expert.  The issue of who set up the shortcut was thus not as obviously critical to his conviction as petitioner now argues.

cumulative effect of all claimed errors in determining whether he had shown prejudice. The most obvious difficulty with this approach is that the prejudice has to result from one of the claimed errors, and for the most part there is not enough overlap between the errors claimed to make it reasonable to apply particular effects of one claimed error to the prejudice analysis of any other issue.  Further, petitioner's argument in this section relates solely to the issue of the creation of the shortcut.  As such, this section adds nothing of substance to the court's prior analysis.  Accordingly, the undersigned finds the cumulative argument to be without merit.

Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2254 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied.  28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability.  28 U.S.C. § 2253(c)(1).  A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right."  28 U .S.C. § 2253(c)(2).  Where a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows ... that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Where a habeas

petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Id. ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot [v. Estelle, 463 U.S. 880, 893 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

None of Petitioner's claims warrants the issuance of a Certificate of Appealability in this case.  For the reasons discussed above with respect to Petitioner's claims, reasonable jurists could not debate whether any of his claims should be resolved in a different manner or were adequate to deserve encouragement to proceed further on the merits.  The recommendation that these claims be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the appropriate disposition of the claims on the record presented.  It is thus recommended that the Court deny any request for a Certificate of Appealability.  Because Petitioner is not entitled to a Certificate of Appealability, any request for leave to appeal in forma pauperis is likewise due to be denied.[13]

---

[13] The guidelines for proceeding in forma pauperis are set forth in 28 U.S.C. § 1915.  An appeal may not be taken in forma pauperis if the trial court certifies in writing that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); see Fed. R. App. P. 24(a)(3)(A); Lee v. Clinton, 209 F.3d 1025, 1026 (7th Cir. 2000) (concluding that "good faith" is "an objective concept" and that "not taken in good faith" is "a synonym for

Conclusion

For the reasons set forth above, it is hereby RECOMMENDED that the

petitioner's Motion to Correct, Set Aside or Vacate Sentence be DENIED, and that a

motion for Certificate of Appealability or for leave to appeal *in forma pauperis* be

denied, if filed.

**The attached sheet contains important information regarding objections to**

**this Report and Recommendation.**

DONE this 23rd day of January, 2013.


/s/  Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE

---

frivolous"); DeSantis v. United Techs., Corp., 15 F. Supp. 2d 1285, 1288-89 (M.D. Fla. 1998) (stating that good faith "must be judged by an objective, not a subjective, standard" and that an appellant "demonstrates good faith when he seeks appellate review of any issue that is not frivolous").  An appeal filed *in forma pauperis* is frivolous if it appears that the appellant "has little or no chance of success," meaning that the "factual allegations are 'clearly baseless' or that the legal theories are 'indisputably meritless.'" Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993) (citations omitted).  For the reasons previously stated in addressing the Certificate of Appealability, the undersigned concludes that an appeal in this case would be without merit and would not be taken in objective good faith.  Thus, Petitioner is neither entitled to a Certificate of Appealability nor to appeal *in forma pauperis*.

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982) (en banc).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[14] after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable Where Proceedings Tape Recorded)**.  Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[14]  Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).